JOHN J. OLSEN, RESPONDENT, *v.* OREGON SHORT LINE & UTAH NORTHERN RAILWAY COMPANY, APPELLANT.

RAILROADS.—ACCIDENT AT CROSSING.—CONTRIBUTORY NEGLIGENCE.—STATUTORY NEGLIGENCE.—Under the statutes of Utah Territory, it is negligence for a railroad company not to provide its engines with a bell of at least twenty pounds weight, and not to ring the same at least eighty rods from a crossing, or in lieu thereof not to sound the whistle at least a quarter of a mile from the crossing, and a party injured by such negligence is entitled to recover unless he were himself guilty of contributory negligence.

ID.—ID.—ID.—STOPPING BY THE WAYFARER.—It is not an absolute rule of law that a person crossing a railroad track must stop and listen to see if a train is coming, but he is simply required to exercise such care and prudence as under the circumstances an ordinarily prudent man would exercise.

ID.—ID.—ID.—INSTRUCTIONS.—Where the court has instructed the jury that in judging of the negligence of either party they should take into consideration all the circumstances to determine what was due care and prudence, and that if defendant was guilty of negligence, plaintiff was entitled to recover, unless he were himself guilty of contributory negligence, and that if the plaintiff had failed to use reasonable care and diligence with reference to all the circumstances or had failed to make a diligent use of his eyes and ears to ascertain, whether a train was approaching and that if there were obstacles in the way, it was plaintiff's duty to use greater efforts to see and hear a train, it is not error to refuse to instruct the jury that if plaintiff knew it was difficult to see or hear a train at the crossing or that the crossing was dangerous, it was plaintiff's duty to stop and listen for a train.

ID.—ID.—NEGLIGENCE AND CONTRIBUTORY NEGLIGENCE.—The obligations, rights, and duties of railroads and travelers upon intersecting highways are reciprocal, and no greater degree of prudence is required of the one than the other.   For while a

9

train has the right of precedence, this right is conditioned upon the fact that it give due and timely warning of the approach of a train, and the degree of diligence imposed upon both parties is such as a prudent man would exercise under the circumstances of the case.

EVIDENCE.—AFFIRMATIVE BETTER THAN NEGATIVE TESTIMONY.— While it may be true as an abstract proposition that testimony of witnesses that they heard an engine-whistle sound is of more weight than negative evidence that certain witnesses did not hear it sound, yet it is not error for the court to give such an instruction where the evidence is clearly contradictory, and the court has already instructed the jury that they were the judges of the testimony and should consider it fairly and impartially and give it the weight that they might think it entitled to.

APPEAL from a judgment of the district court of the third district, and from an order refusing a new trial. Hon. Charles S. Zane, judge. The opinion states the facts.

*Messrs. Williams and Van Cott,* for the appellant.

The instruction should have been given that the plaintiff should have stopped before venturing on the track. 2 Rorer on Railways, pp. 1061–1065; 2 Wood's Railway Law, pp. 1301–1332 and notes; Patterson's Railway and Accident Law, p. 168, note 4; 2 Shearman and Redfield on Negligence, sec. 476, notes; *Wilds* v. *Railway Co.,* 24 N. Y. 430, 440; *Railway Co.* v. *Adams,* 6 Pac. Rep. 529; *Railway Co.* v. *Houston,* 95 U. S. 697; *Schofield* v. *Railway Co.,* 114 U. S. 615; *Brickell* v. *Railway Co.,* 42 Am. and Eng. Ry. Cas. 107. All courts are agreed that where there are special circumstances of danger, it is the duty of the traveler not only to look and listen, but to stop. *Merkle* v. *Railway Co.,* 9 At. Rep. 680; *Brady* v. *Railway Co.,* 45 N. W. Rep. 1110; *Dumming* v. *Bond,* 38 Feb. Rep.

813; 2 Rorer on Railways, 1061–1062; 4 Am. and Eng.
Encyc. Law, 947, note; *Schafert* v. *Railway Co.*, 17 N.
W. Rep. 893; *McCrary* v. *Railroad Co.*, 31 Fed. Rep. 531;
*Fleming* v. *Railway Co.*, 49 Cal. 253; *Allen* v. *Railway
Co.*, 19 At. Rep. 105; *Railway Co.* v. *Howard*, 24 N. E.
Rep. 892.    Therefore the two requests that if plaintiff
knew the place and that it was difficult to see or hear
trains approaching, or that it was not safe to cross with-
out stopping his team, then it was his duty to stop, ought
to have been given.

The whole theory of the instructions given is that a
traveler has an equal, if not a superior, right at the cross-
ing in question, when the rule is well settled that a rail-
way train has the preference.    *Dumming* v. *Bond*, 38 Fed.
Rep. 815.    And the theory of the court that one is excused
when the train is behind time or is being run as a special
is equally wrong.    *Slater* v. *Railway Co.*, 75 N. Y. 281;
2 Wood's Railway Law, 1304–5; *Schofield* v. *Railway Co.*,
*supra; Railway Co.* v. *Howard*, 24 N. E. Rep. 892; *Brady*
v. *Railway Co.*, 45 N. W. Rep. 1110.

The court also erred in refusing to give the instruction
that positive testimony is better than negative.    19 Ill.
499; 71 Am. Dec. 236, 239, note; 9 Fed. Rep. 867.

*Messrs. Ferguson and Cannon*, for the respondent.

MINER, J.:

This action was brought in the third district court to
recover damages for injuries sustained by the respondent to
himself and to his horses, wagon, and harness while crossing
the railroad track of the appellant.    It appears from the
testimony offered on the part of the respondent that about
6 o'clock P. M., on February 14, 1891, the respondent was
traveling from east to west on a public highway near Bing-
ham Junction, driving a span of horses attached to a cov-

ered lumber wagon, containing several cumbersome articles.
As he approached the crossing in question, and several hun-
dred yards from it, respondent saw the regular passenger
train going north over the crossing.    Between this track
and the wagon road there was a row of large trees which
paralleled the track, the butts of which trees were about
18 feet from the track, with branches extending out.    Below
these trees there was a hedge about eight feet high.    Along
the south side of the wagon road were two rows of shade
trees, quite bushy, and between the row of trees that paral-
leled the railway track and those paralleling the wagon
track was an orchard, a house, a barn, stack yards, haystack,
stables, granary, etc., which rendered it extremely difficult,
if not impossible, for the respondent to see an approaching
train from the south, excepting in one or two small places,
where it is barely possible to see through to the track.
After the regular train passed, the respondent continued to
drive slowly and on a walk towards the crossing.    The
respondent testifies:

"After turning the corner, I did nothing only look out
for a train, to see if any more trains were coming.    I
looked both ways, south and north, and listened also for a
whistle or bell.    On getting nearer the track, towards the
house and barn and orchard, I was more careful to look
out.    I leaned forward, with my head out of the front end
of the wagon, because I had the cover right to the end
gate, and the track came from the southeast to the north-
west, and I was in that position in order to have a view
towards the track, and it is difficult to discover a train at
that place, especially when the train is running fast.    I
neither saw nor heard any train, but only a whistling noise
from the trees, because there was a big wind.    I heard
nothing else, except the noise of the wagon.    About eighteen
feet east of the track, I commenced to have a view of the
same, and could see nothing; but as the horses passed upon

the crossing, I noticed a train coming, running as fast as a shot, and I then tried to stop my team, but do not know whether I stopped it or not, because the engine struck me just like a shot. The train was running towards the north, and I heard neither the bell or the whistle. I could have heard them if sounded. My hearing was good. I found some days after that the train had carried me fifty yards from the crossing. The wagon was broken to pieces, and the horses killed. My head was badly cut, and my right shoulder dislocated, and I have not been able to work since. I could not lift three pounds, even, with my shoulder."

Other testimony was offered by the respondent tending to corroborate his testimony. It also appears that the train causing the injury was a special one, consisting of a locomotive and caboose, running at the rate of 30 to 35 miles an hour. Contrary to the custom of the company, neither the engine nor car had brakes upon them. There was no cow-catcher on the engine. It also appears from the testimony of several witnesses that the appellant failed to sound its whistle or ring the bell, as required by the statute, or give any other warning or notice of its approach. Respondent did not stop his team on nearing the track before crossing, but looked both ways, up and down the track, continually. When the horses' feet were on the track, a person in a wagon going west can see only a short distance south along the track. It also appears by the testimony of other witnesses that only a second or two intervened between the whistle from the engine and the accident, and that the bell did not ring. A strong wind was blowing from the south at the time. Testimony offered by the appellant tended to show that the whistle was sounded and the bell rung more than 80 rods south of the crossing; that the special train was running from 18 to 20 miles an hour at the time; and that the whistle was sounded for the

crossing; and that the respondent was familiar with the obstructions to the view of passing trains at this point.

The counsel for the railroad requested the court to give instruction to the general effect that if the plaintiff knew that it was difficult to see and hear trains approaching at the crossing in question, that the crossing was dangerous, and that it certainly could be discovered by looking and listening, then it was his duty to stop his team, and listen for approaching trains, before crossing, and, if he did not do so, he could not recover in the action; that, if there is evidence in the case that the engine whistle was sounded, that some of the witnesses did hear it, and others did not hear it, evidence that the whistle was sounded is stronger and more worthy of belief than evidence that others did not hear it. The judge refused to adopt the instructions as presented by the counsel, bnt charged, in effect, that "(2) In order to determine the question as to whether either party was negligent, you should take into consideration the circumstances and conditions with which they were surrounded, and you have a right to take into consideration the fact (if you believe it from the evidence) that there were obstructions to the view of the track or train from the road on which the plaintiff was traveling, and whether the train was a special one, and not a regular train, and whether there was a high wind, or otherwise. If you believe that there were obstructions to the view of the crossing, and that there was a high wind, or any other fact existed that would affect the conduct or action of a reasonable man, then both plaintiff and defendant would be required to use greater care. The care should be in proportion to the danger.

"(3) If you believe that the regular train had passed, and the plaintiff had seen it, and that this was a special train, you have a right to take that fact into consideration in determining the question as to the care used by the

plaintiff. You, in fact, should determine whether the parties used the amount of care that they should have used as reasonable men under the circumstances. You should take into consideration all the circumstances with which they were surrounded at the time.

" (4) The burden is upon the plaintiff to prove negligence upon the part of the defendant that caused the injury. The burden is upon the plaintiff to show by a preponderance of the evidence that the defendant or its servants were guilty of negligence, and that that negligence caused the injury, and the burden is upon the defendant to show want of care upon the part of the plaintiff, unless the evidence of the plaintiff tends to show it.

" (5) The court further charges you that the statutes of this Territory provide that a bell of at least twenty pounds' weight must be placed upon each locomotive engine, and be rung at least a distance of eighty rods of where the railroad crosses any street, road, or highway, and be kept ringing until it has crossed such road, street, or highway; that the sounding of the locomotive whistle at least one-fourth of a mile before reaching any highway crossing shall be equivalent to ringing the bell.

" (6) If you believe from a preponderance of the evidence that the injury occurred, as alleged in the complaint, at a crossing where a highway crosses the railroad, and that the defendant did not have such a bell and ring it, or sound a whistle, as required by the statute, that would be negligence upon the part of the defendant; but, as the court has stated before, though that negligence may have contributed to the injury, if the plaintiff was also guilty of negligence or want of ordinary care, he could not recover.

" (7) The court further charges you that, if you believe from the evidence that the plaintiff, at the time he attempted to cross the defendant's railway track, did not

make vigilant use of his eyes and ears to look and listen for trains, then the plaintiff is guilty of contributory negligence, and cannot recover in this action.

" (8) If you further believe from the evidence that there were any obstacles in the way of the plaintiff seeing an approaching train coming from the south, then it was the plaintiff's duty to use greater efforts to see and hear any train that might be approaching.

" (9) The court further charges you that, if these facts existed,—that there were obstructions, that there was a high wind, and the train was a special one,—that would also require the defendant to use greater care than it otherwise would be required to use. In fact, both parties must use such reasonable care as ordinarily prudent persons would exercise under the same circumstances. They must be tested by such a degree of care as prudent persons ordinarily take."

We think the law of this case was fairly submitted to the jury by the court. If the railroad crosses a public highway, and on the same level, those traveling upon the highway, as well as the railroad company, have a legal right to pass the crossing, and to require reasonable and due care on the part of those passing over the other to avoid collision. These mutual rights must be governed by the relative rights subsisting between the parties. It cannot be expected that a railroad train shall stop at a crossing under any ordinary circumstances, and allow an approaching wagon to cross its track. The train has the preference and right of way, and the wagon must wait for the train; but it is the duty of the train to whistle or ring the bell, and give the necessary reasonable timely warning of its approach, so that those traveling on the highway may stop and allow it to pass; and, if the wagon is on the track, the trainmen should use every reasonable exertion to stop

the train to avoid inevitable danger to life. What is a reasonable and timely warning may depend upon many surrounding circumstances.

Mr. Justice Bradley, in *Improvement Co.* v. *Stead*, 95 U. S. 163, says that in such a case "it cannot be such if the speed of the train be so great as to render it unavailing. The explosion of a cannon may be said to be a warning of the coming shot; but the velocity of the latter generally outstrips the warning. The speed of a train at a crossing should not be so great as to render unavailing the warning of its whistle and bell; and this caution is especially applicable when their sound is obstructed by winds and other noises, and when intervening objects prevent those who are approaching the railroad from seeing a coming train. In such cases, if an unslackened speed is desirable, watchmen should be stationed at the crossing. On the other hand, those who are crossing a railroad track are bound to exercise ordinary care and diligence to ascertain whether a train is approaching. They have, indeed, the greatest incentives to caution, for their lives are in imminent danger if collision happen; and hence it will not be presumed without evidence that they do not exercise proper care in a particular case. But, notwithstanding a hazard, the infirmity of the human mind in ordinary men is such that they often do manifest a degree of negligence and temerity entirely inconsistent with the care and prudence which is required of them; such, namely, as an ordinarily prudent man would exercise under the circumstances. When such is the case, they cannot obtain reparation for their injuries, even though the railroad company be in fault. They are the authors of their own misfortunes. These propositions are so indisputable that they need no reference to authorities to support them. We think the judge was perfectly right, therefore, in holding that the obligations, rights, and duties of railroads and

travelers upon intersecting highways are mutual and reciprocal, and that no greater degree of care is required of the one than of the other; for, conceding that the railway train has the right of precedence of crossing, the parties are still on equal terms as to the exercise of care and diligence in regard to their relative duties. The right of precedence referred to does not impose upon the wagon the whole duty of avoiding a collision. It is accompanied with, and conditioned upon, the duty of the train to give due and timely warning of approach. The duty of the wagon to yield precedence is based upon this condition. Both parties are charged with the mutual duty of keeping a careful lookout for danger, and the degree of diligence to be exercised on either side is such as a prudent man would exercise under the circumstances of the case in endeavoring fairly to perform his duty."

It was for the jury to pass upon the weight of the testimony, and as to whether or not the respondent was guilty of contributory negligence, under the cicumstances in proof. If they believe the testimony offered by the plaintiff, and that the defendant was guilty of negligence under the circumstances shown, and that the plaintiff was not guilty of negligence, or did not contribute to cause the injury by his own negligence and want of ordinary care, they should find for the plaintiff. Circumstances might arise where it would be the duty of a person crossing a railroad track to stop and look and listen before crossing. As we have seen, those circumstances are such as would ordinarily control the conduct of reasonable, careful, prudent men under the same circumstances, having respect to such mutual reciprocal obligations and duties as are imposed upon others, and which reasonable men expect to give, receive, and act upon under like circumstances. The plaintiff may have expected that, if any train was passing, it would blow its whistle or ring its bell, as provided by statute; that it would be equipped

with its customary brakes; and that it would not ·be run at an unusual rate of speed, and without reasonable and timely warning of its approach; and, while expecting this, yet it was his duty under the facts shown, to make careful and vigilant use of his eyes and ears, to look and listen for trains before crossing, and use greater efforts to see and hear any train that might be approaching than he would be expected to do were it not for the obstructions ˙that prevented his view. We think these questions were fairly covered by the charge of the court, and thus properly left for the consideration of the jury.

The general rule is that "one who, by his negligence, has brought an injury upon himself, cannot recover damages for it. Such is the rule of the civil and of the common law. A plaintiff in such cases is entitled· to no relief. But where the defendant has been guilty of negligence also, in the same connection, the result depends upon the facts. The question in such case is (1) whether the damage was occasioned entirely by the negligence or improper conduct of the defendant, or (2) whether the plaintiff himself so far contributed to the misfortune by his own negligence or want of ordinary care and caution that, but for such negligence or want of care and caution on his part, the misfortune would not have happened. In the former case, the plaintiff is entitled to recover; in the latter, he is not." *Railroad Co.* v. *Jones,* 95 U S. 442; *Bitner* v. *Railway Co.,* 4 Utah, 502, 11 Pac. Rep. 620.

Exception is taken to the refusal of the court to give appellant's third request, which embraces the principle that positive evidence on the part of witnesses for the appellant that the bell was rung and the whistle sounded is of more weight than negative evidence, to the effect that certain witnesses did not hear the bell rung or whistle sounded. Several witnesses on the part of appellant testify that the bell was rung and the whistle sounded 80 rods from

the crossing. The plaintiff testified that he was watching and listening for the train and the sound of the whistle and bell, but did not hear either until he saw the train, about two seconds before he was struck; that his hearing was good, and he would have heard them if sounded. Larsen, one of plaintiff's witnesses, testified he was near the crossing. That he did not hear the bell. Could have heard it if it had been rung. Could have heard the whistle if it had been sounded before he did hear it. It was only a second or two between the whistle and the crash. Loyd, one of plaintiff's witnesses, testified he crossed the track a few moments before the accident. Did not hear the bell or whistle until the accident happened. There were a few seconds between the whistle and the crash. Saw the train before he heard the whistle. Would have heard the whistle if it had been blown. This testimony raises a conflict of evidence against the affirmative testimony of the appellant's witnesses, and was fairly covered by the general charge of the court. The request could have been given without impropriety; yet, under the circumstances, we discover no error in its refusal. *Bunting* v. *Railroad Co.*, 16 Nev. 277; *Renwick* v. *Railroad Co.*, 36 N. Y. 132; *Railroad Co.* v. *Richardson*, 25 Kan. 391. Upon the whole record, we discover no error. The judgment of the court below is affirmed.

BARTCH, J., concurred.