JOSEPH DEDERICHS, APPELLANT, *v.* THE SALT LAKE CITY RAILROAD CO., RESPONDENT.

ELECTRIC RAILWAYS—NEGLIGENCE—QUESTION FOR JURY.

Where the testimony tends to show that the electric car of defendant was run at the rate of about 20 miles an hour, at the time of the accident, much faster than was allowable under the city ordinances, and that no gong was sounded, and no bell rung, *held*, that it is quite possible that, had the car been run at its usual legal rate of speed, and the bell rung, and gong sounded, as should have been done, the accident would not have happened And where it is also quite possible that, had the plaintiff observed that degree of ordinary care and caution as would be expected of an ordinarily prudent man under like circumstances, the accident would not have happened, still it was for the jury to pass upon the testimony, and determine from it, the question of the negligence of the street car company, under the circumstances of this case in proof, and it was error for the trial court to grant a motion for a nonsuit.

(No. 644. Decided Feb. 11, 1896. 44 P. R. 649.)

Appeal from the district court of the Third judicial district, Territory of Utah. Hon. S. A. Merritt, *Judge.*

Action by Joseph Dederichs against the Salt Lake City Railroad Company to recover damages for an injury caused by an electric car. From a judgment on motion for a nonsuit plaintiff appeals. *Reversed.*

*Richard B. Shepard, A. N. Cherry,* and *H. O. Shepard,* for appellant.

Cited: *Riley* v. *Rapid Transit Co.,* 10 Utah 428; Booth's Street Railway Law § 359; *Grand Trunk Railway Co.* v. *Ives,* 144 U. S. 408; *Jeffs* v. *R. G. W. Ry. Co.,* 9 Utah 374; *Smith* v. *R. G. W. Ry. Co.,* 9 Id. 141; *Hicks* v. *Citizens' Ry. Co.,* 25 Lawyers' Repts. Ann., 508, Ann. case; *Connelly* v. *Trenton Pas. Ry. Co.,* 44 Am. St. Repts. 424, and notes; *Thoreson* v. *La Crosse Cy. Ry. Co.,* 41 Am. St. Repts. 64, and notes; Beach on Contributory Negligence, 2d Ed., § 462; *Lyman* v. *Ry. Co.,* 114 Mass. 83; *Ry. Co.* v. *Robinson,* 127 Ill. 1; *Shea* v. *Ry. Co.,* 44 Cal. 414; *Adolph* v. *Ry. Co.,* 76 N. Y. A. 530; *Driscoll* v. *Market St. Cable Ry. Co.,* 97 Cal. 553; *New Orleans & N. E. R. Co.* v. *Thomas,* 60 Fed. R. 379.

Even where the evidence is conflicting, the question of negligence is for the jury. *Baltimore Traction Co.* v. *Appel,* 31 At. Rep. (Md.) 964.

The burden of establishing contributory negligence is on the defendant. *Baltimore Trac. Co.* v. *Appel, Supra; U. P. Ry. Co.* v. *Novak,* 61 Fed. Rep. 574.

*Rawlins & Critchlow,* for respondent.

The ruling of the lower court was clearly right as a matter of law. *Railroad Co.* v. *Houston,* 95 U. S. 697; *Schofield* v. *Railroad Co.,* 114 U. S. 615; *Elliott* v. *Railway Co.,* 150 U. S. 245; Booth on Street Railways, 312, 315, 317; *Kelly* v. *Hendric,* 26 Mich. 255; *Davenport* v. *Brooklyn Ry.*

*Co.*, 100 N. Y. 632; *Fenton* v. *Sec. Av. St. Ry. Co.*, 126 N. Y. 625; 1 Thompson on Neg., 415, 416.

MINER, J.:

This action was brought to recover damages for personal injuries to appellant, claimed to have been occasioned by the respondent in negligently running its electric street cars in the city of Salt Lake. It appears, in substance, from the testimony of the plaintiff, that at about 5 or 6 o'clock in the afternoon, in October, 1891, he was driving a horse and wagon on Eighth East street in Salt Lake City, and had stopped to water his horse at a trough, situated about 40 feet north of the north line of Second South street, on Eighth East street, after which he moderately drove south on Eighth East street, and after crossing the sidewalk on the north side of Second South street, he saw a car coming west at a point about 300 feet east of the crossing. At this time, he states, he thought he had plenty of time to cross the crossing. Trees obstructed his view until he had crossed the sidewalk. When his horse got to the railroad track the car was about 120 feet from the east crossing of Second South street. At this time he first noticed that the car was running rapidly. It was getting dark. That he then gave his horse a licking to get out of the way of the car. That before the car struck him, the motorman said: "Get out there." No bell was being rung, and no gong was being sounded. The car struck the hind wheels of his wagon, and broke them down on the south side of the track; his buggy was torn to pieces, one of his teeth knocked out, one of his ribs broken, and he was otherwise seriously injured. From these injuries he claims he has suffered ever since. That, prior to the accident, he was a strong, healthy man, about 42 years of age. That he paid $22

for repairing the buggy, $100 for medical services, and lost 1½ months' time, worth $8 per day. That, at the time of the accident the car was running at an unusual rate of speed, at about 20 miles per hour. That he did not notice the speed of the car until he got on the track. The car was coming down grade, and he could not tell how fast it was running until his horse reached the track. After the car struck him it ran 80 feet west on Eighth East street, before it was stopped. The horse was gentle and accustomed to the cars. He could not state whether his horse walked or trotted when coming towards the track. That his horse's head was about 40 feet from the track when he first saw the car. That, if the car had been running at the usual rate of speed, he would have had plenty of time to cross safely. The rails were wet, and it was on down grade. Mr. Scoville, a witness for the plaintiff, testified in substance: That he was on the corner, and saw the collision. Saw two cars coming west, one behind the other, so close that it seemed that they were racing. At this time he saw plaintiff at the watering trough, going south. He was struck and his buggy injured, and he was thrown out by the collision, which occurred near the center of the street. The car ran 125 feet west of the point of collision before it stopped. Up to the time the horse went onto the track, no effort was made to stop the car. He struck the horse with his whip when it was on the track. At the time he got out his whip, the car was about 75 to 100 feet from the buggy. He says: "In my judgment, based upon observations, the car was running 20 miles an hour, and faster than the usual rate of speed. The motorman did not put on brakes, or try to stop the car, until the instant the collision occurred. He put on brakes when it was apparent that he would hit the buggy, but not before. Did not hear any bell rung or gong sounded."

He says: "I don't think he could have checked his horse after it got on the track." Mr. Watrous, a passenger, testified in substance: Saw plaintiff - driving towards the track, and close to it. Do not think the car stopped from the time it left Ft. Douglas. The car was going at a fast rate of speed. "In fact, it was going as fast as I ever saw a car go. It was going faster than any street car that I ever rode on. Saw the man on the track when the car was 75 or 100 feet away. The motorman did not try to stop the car until it was very close to the buggy. When the car stopped, it was 150 to 180 feet west of the west crossing of Eighth East street. I remarked on coming down from Ft. Douglas, that we were running very fast." Mr. Kelson, the conductor, testified in substance: "Saw a man approaching the track, within a few feet of it. I spoke to the motorman, and said, 'Look out Sam,' and the motorman looked back at me. When the man saw his danger, he struck the horse with his whip. Saw plaintiff when he drove on Second South street. The car was then 160 feet east on Eighth East street, and over 200 feet from the place of the collision when it was stopped. We were behind time, and made no stops from the fort. If a car was in good condition, and a dry rail, it ought to be stopped in very near its length. A motorman can wind up brakes in about two seconds. I didn't hear the bell ring. We were running faster than usual. I reported to the company that the bell rang, but as a matter of fact, it did not ring, as there was no bell to ring." The report of the accident made by this witness to the company was somewhat different from his testimony. It is shown that he left the employ of the company after the accident, and worked several days for the plaintiff. After the appellant rested his case, respondent's counsel moved for a judgment of nonsuit, on the ground (1) that the evidence fails to show

that the defendant's agents, in charge of the car, were guilty of negligence which was the proximate cause of the injury; (2) that plaintiff was guilty of contributory negligence which directly caused the injury for which he seeks to recover.  The court granted the motion for a nonsuit, dismissed the cause, and rendered judgment against the plaintiff for costs.  From this judgment and order, and from the order overruling the plaintiff's motion for a new trial, this appeal was taken.

The respondent is a corporation, engaged in running and operating a line of electric street cars on several streets in Salt Lake City.  Appellant contends that the evidence was sufficient to show negligence and want of ordinary care on the part of the respondent in running and operating the car, and that at the time in question, the car was running at an unusually rapid rate of speed, which was not only in excess of 12 miles per hour, allowed by the ordinances of the city, but that the undisputed testimony shows that the car was being run at a rate of 20 miles per hour, and that the respondent was also negligent in not sounding the gong and ringing its bell at the crossing in question.  Upon the other hand, the respondent claims that the appellant was negligent in his conduct, which not only contributed to, but caused the accident. The testimony tends to show that the car was being run at a rate of about 20 miles an hour at the time of the accident, much faster than was allowable under the city ordinances.  It also appears from the testimony, that no gong was sounded and no bell rung on the occasion in question.  It is quite possible that, had the car been run at the usual legal rate of speed, and the bell rung or gong sounded, as the appellant might expect would be done, this accident would not have happened.  It is also quite possible that, had the appellant observed that degree of ordinary care and caution as would be

expected of an ordinarily prudent man under like circumstances, this accident would not have happened. This court has previously had occasion to pass upon this question of negligence and contributory negligence, as affecting the right of recovery. In the case of *Wines* v. *Railway Co.*, 9 Utah 232, 33 Pac. 1042, this court said: "As the question of negligence and want of ordinary care on the part of the defendant was one of the facts, for the jury to determine, under all the facts and circumstances of the case, and under proper instruction from the court, so, also, the question as to whether or not the plaintiff, by his negligence and want of ordinary care and caution, contributed to cause the injury, and whether or not there was negligence in the plaintiff which was the proximate cause of the injury, and whether or not the defendant, by the exercise of reasonable care and prudence, might have avoided the consequences of the plaintiff's negligence, if it was such, were likewise questions of fact for the jury to determine, under like rules." In the case of *Railway Co.* v. *Ives*, 144 U. S. 428, 12 Sup. Ct. 697, the court said: "As the question of negligence on the part of the defendant was one of fact for the jury to determine, under all the circumstances of the case, and under proper instructions from the court, so also, the question of whether there was negligence in the deceased, which was the proximate cause of the injury, was likewise a question of fact for the jury to determine, under like rules. The determination of what was such contributory negligence on the part of the deceased as would defeat the action, or perhaps more accurately speaking, the question of whether the deceased, at the time of the fatal accident, was, under all the circumstances of the case, in the exercise of such due care and diligence as would be expected of a reasonably prudent and careful person, under similar circumstances, was no more a question of law for the

court than was the question of negligence on the part
of the defendant. There is no more of an absolute stand-
ard of ordinary care and diligence in the one instance
than in the other." *Olsen* v. *Railway Co.*, 9 Utah 129, 33
Pac. 623; *Riley* v. *Transit Co.*, 10 Utah 428, 37 Pac. 681;
*Jeffs* v. *Railway Co.*, 9 Utah 374, 35 Pac. 505; *Smith* v.
*Railway Co.*, 9 Utah 141, 33 Pac. 626; *Woods* v. *Pacific Co.*,
9 Utah 146.

We think it was for the jury to pass upon the testi-
mony, and determine from it the question of the negli-
gence of the street car company, and as to whether or not
the appellant was guilty of contributory negligence, under
the circumstances in proof. The appellant may have
expected that, if the car was being run at an unusual rate
of speed, the motorman would have sounded the gong or
rang the bell in order to give timely warning of his
approach; that the car would have been equipped with the
customary brakes; that it would not have been run at
more that the usual rate of speed, without reasonable
and timely warning, while crossing the street; that the
operators of the car were in a better position to judge of
the speed of the car than would the appellant be, towards
whom the car was approaching; and while expecting this,
yet it was his duty under the facts shown, to make reason-
able, careful, and diligent use of his eyes and ears. Each
case involving these questions must be weighed by such a
reasonable standard of care as would be applied to the
conduct of ordinarily reasonable men, acting under like
circumstances, taking into consideration the time, local-
ity, and circumstances surrounding the transaction. We
think the alleged negligence on the part of the
respondent, and of the alleged contributory negli-
gence on the part of the appellant, were alike questions
for the jury, and are of the opinion that the court erred
in granting the nonsuit, and that, upon the facts shown,

the case should have been submitted for the consideration of the jury. . With this view of the case, it is unnecessary to pass upon the other question's presented by the record. The judgment of the court below is set aside and reversed, with costs, and a new trial granted.

ZANE, C. J., and BARTCH, J., concur.