OWEN HUGHES, Appellee, v. CHICAGO, ST. PAUL & KANSAS CITY RAILWAY COMPANY, Appellant.

1. **Railroads**: NEGLIGENCE: CONTRIBUTORY NEGLIGENCE: EVIDENCE. In an action to recover for injuries sustained from a collision with a train of the defendant at a highway crossing, it appeared that the plaintiff approached the crossing in a wagon; that about three-hundred feet from the crossing the highway was about twenty-five feet higher than the crossing, but from that point the highway descended towards the crossing, and just before reaching it passed through a cut, the bank of which, at a distance of one hundred and eight feet, was nine feet and two inches higher than the crossing. The plaintiff claimed that there were points in the highway from which he could not see an approaching train, and his testimony was supported by several witnesses, photographs, and a plat of the locality. The defendant, on the other hand, showed by witnesses, photographs, and plats that a person sitting on a wagon on said highway, forty feet from the crossing, could see a train six hundred and twenty-seven feet away, and at a point thirty feet from the crossing, and at the crossing as well, a train could be seen for seven hundred and forty-four feet. It appeared, however, that at the time of the accident portions of the bank between the railway and highway were covered with a dense growth of weeds and grass two or three feet in height, which had disappeared when the photographs introduced by the defendant were taken, and that parts of the highway were lower than others. The engineer and fireman of the train testified that they were looking ahead constantly, but did not see the plaintiff until a moment or two before the collision occurred. *Held*, that the evidence

that the plaintiff could not see the train when from twenty to forty feet from the crossing was sufficient to support a verdict for the plaintiff.

2. ——: ——: FAILURE TO RING AND WHISTLE: EVIDENCE. The employees of the defendant and one other person testified that the bell was rung and the whistle sounded in approaching the crossing where the accident occurred, but the testimony of one of these witnesses was discredited by his own statements, and a greater number of witnesses, who were in a position to hear the signals if given, testified that they did not hear them. *Held*, that the jury was warranted in finding that the defendant was negligent in not giving the signals for the crossing.

*Appeal from Marshall District Court.*—HON. D. R. HINDMAN, Judge.

SATURDAY, MAY 20, 1893.

ACTION to recover for injuries alleged to have been caused by negligence on the part of the defendant. There was a trial by jury, and a verdict and judgment for the plaintiff. The defendant appeals.—*Affirmed.*

*Cummins & Wright* and *J. L. Carney*, for appellant.

*Caswell & Meeker*, for appellee.

ROBINSON, C. J.—On the twenty-fifth day of September, 1890, defendant owned and operated a railway which extended through Marshall county. In the morning of that day the plaintiff was driving a team of horses, attached to a wagon, northward on a highway in the county named, and when on a crossing of the defendant's railway, the wagon in which he was sitting was struck by the locomotive engine of a freight train which approached from the south, and he was thrown out and injured. For the injuries thus received and for injuries alleged to have been caused to the horses, harness, and wagon, he seeks to recover. He claims that the injuries in question resulted from the negligence of the defendant in not sounding the whistle and ringing the

bell of its engine, as required by law. The defendant denies negligence on its part, and alleges that the accident was caused by the negligence of the plaintiff.

I. The highway approaches the place of the accident from the south, over a hill the top of which is about twenty-five feet higher than the crossing, and about three hundred feet from it. From the top of the hill the highway descends toward the crossing, and, just before reaching it, passes through a cut. The highway is sixteen inches higher than the crossing at a point forty feet south of it. The railway approaches the crossing from the southwest on a grade descending at the rate of fifty-three feet per mile at an angle of about twenty-five degrees, and when near the crossing it passes through a cut. At a point one hundred and eight feet south of the crossing the east bank of that cut is nine feet and two inches higher than the crossing, and at a point about one hundred and fifty feet further south it is thirteen feet and eight and one-half inches higher than the crossing. The center of the highway at the top of the hill is less than one hundred and fifty feet from the railway, and a person sitting in a wagon at that point can see the track from the crossing southward a distance of more than one thousand, six hundred feet. The plaintiff claims that on the morning of the accident, while sitting in his wagon as it was drawn northward from the top of the hill, there were places before the crossing was reached from which he could not see a train as it approached from the south; that as he was going down the hill out of sight of the track he looked for a train, but none was in sight; that his horses were walking at the rate of about three miles an hour; that when they were within about twenty feet of the track he checked them, listened and looked both ways for a train, but not hearing or seeing any, he started over the crossing, and the accident occurred.

1. RAILROADS: negligence: contributory negligence: evidence:

To sustain his claim that there were places in the highway from which he could not see the train, he introduced several witnesses, and photographs and a plat of the locality. The evidence thus presented is clear and direct, and tends strongly to sustain his claim. To disprove it the defendant introduced witnesses, photographs, and plats which show that a train south of the crossing can be seen by a person sitting in a wagon in the highway forty feet south of the crossing a distance of six hundred and twenty-seven feet, and from a point thirty feet south of the crossing, and also from the crossing, a distance of seven hundred and forty-four feet. If certain of the photographs offered by the defendant were taken when the obstructions to sight were as great as when the accident occurred, and from the points at which the plaintiff says he looked for the train, and the highway was unchanged, the conclusion would be irresistible that he must have seen the train had he looked for it, and that he was negligent in attempting to cross as he did; but, when the accident occurred, portions of the point of land or bank between the highway and railway were covered with a dense growth of weeds and timothy grass, which made a screen from two to three feet in height, through which the plaintiff could not have seen. That screen had so nearly disappeared six months later, when the photographs of the defendant were taken, that it had ceased to hide an approaching train from the view of a person in the highway. It is shown that the highway has been raised somewhat, near the crossing, since the accident occurred, and there is evidence to the effect that one side of it is, in places, lower than the other. It is not, therefore, certain that the camera used to take the photographs of the defendant was on the same level as were the eyes of the plaintiff when he looked for the train. The testimony of the plaintiff that he was not in sight of the train when he was about thirty feet

from the crossing is corroborated by that of the engineer, fireman and brakeman of the train. The engineer states that he was looking ahead constantly, and did not see the plaintiff until a moment or two before the collision occurred. The fireman states that he was looking out of the cab window, but did not see the plaintiff until his horses had nearly reached the crossing. The rear brakeman was on the top of a car near the rear end of the train, and saw the plaintiff's team when it was on the hill, but it disappeared from his sight, and he did not see the plaintiff again until the latter was within ten or fifteen feet of the crossing. The front brakeman was on the second or third car from the engine. He saw the plaintiff disappear in the cut near the crossing, and did not see him again until he was within ten or fifteen feet of it. We conclude that the evidence to show that plaintiff could not see the train when from twenty to forty feet from the crossing is ample to sustain the verdict as to that issue.

II. The conductor, engineer, fireman, and brakemen of the train, and a man named Wright, who lived in the vicinity, testify that the signal for a crossing was given by the engine whistle when the engine was near the whistling post, and about one thousand feet from the crossing, and all of them but the conductor and Wright testify that the bell was sounded from that time until the crossing was reached. It is shown without dispute that the danger signal was given with the whistle just before the crossing was reached, but the plaintiff contends that before the danger signal was given no sound was made by the bell or whistle, and testifies to that effect. When he was about halfway down the hill he met two men who were driving southward. After they had passed him a short distance they saw the train, but neither of them heard the bell, although the train passed but a few rods from them, nor the whistle until it gave

*failure to ring and whistle: evidence.*

the danger signal at the crossing. Five other wit-
nesses, of whom two were within sixty, and two within
ninety, rods of the crossing, heard the danger signal,
but no other, although all could have heard the
crossing signal had it been given at the whistling post.
Two witnesses heard Wright say that the whistle was
not sounded until the danger signal was blown; hence
the jury were authorized to disregard his testimony on
that point.

The greater number of witnesses support the claim
of the plaintiff that no signal was given until the engine
had nearly reached the crossing, and that the whistle
could have been blown at the whistling post without
being heard by some of them is improbable. The con-
flict in the evidence on that branch of the case is too
great to permit us to say that the verdict is not sup-
ported by the evidence. That it was the duty of the
defendant to sound the whistle and ring the bell before
the crossing was reached is not questioned. See Acts
Twentieth General Assembly, section 1, chapter 104;
*Reed v. Railway Co.*, 74 Iowa, 190. The train was
moving rapidly on a descending grade, with brakes set,
and without using steam, making comparatively little
noise, and the testimony of the plaintiff that he listened
for it when near the crossing, but did not hear it, is not
unreasonable.

We conclude that the judgment of the district
court is right. It is, therefore, AFFIRMED.