## FRANK LEAK, Respondent, *v.* RIO GRANDE WESTERN RAILWAY COMPANY, Appellant.

Negligence.—Contributory Negligence.—Injury at Crossing. —The question whether or not a wayfarer in crossing a railway track, where he was injured, exercised reasonable care in venturing upon the track, is one to be decided by the jury with reference to all the circumstances under proper instructions from the court, and whenever a given state of facts is such that reasonable men would fairly differ upon the question as to whether there was negligence or not, the question of negligence should be submitted to the jury.

Railroads.—Accident at Crossing.—Instructions.—Where the court instructed the jury that they should take into consideration the location of the tracks and all other facts in evidence in order to arrive at a conclusion as to negligence or contributory negligence, it was not error to refuse an instruction that plaintiff could not recover for any injury resulting to him from any conditions of the place of the accident known to the plaintiff, or from the ordinary nature of the business carried on by the defendant there.

Trial.—Instructions.—Particular Phase of Case.—Where a request to charge is couched too much upon the weight of the testimony, and confines the jury to the particular circumstances narrated, without notice of others that may be of importance, and selects one prominent fact or circumstance as controlling the case to the exclusion of all others, it should be refused.

Damages.—Special Damages.—Immaterial Error.—Where the court instructed the jury that they should allow for the harness upon team injured, but there was no claim for such damages in the complaint, and no complaint was made at the time of such instruction, and there was no evidence upon the point, because the same was stricken out on motion of the defendant, *held* that the instruction was harmless and not reversible error.

Appeal from a judgment of the district court of the third district, and from an order refusing a new trial,

Hon. Charles S. Zane, judge.  The opinion states the facts.

*Messrs. Bennett, Marshall and Bradley,* for the appellant.

*Messrs. Powers and Hiles,* for the respondent.

MINER, J.:

The plaintiff in this case was a teamster hauling ore from the mines at Bingham canyon, and placing it in cars provided for it by the defendant at Bingham, Utah. The railroad track and yard at Bingham extend southwesterly down the canyon. The track lying east of the depot is called the "main track," and the "ore track" is about 22 feet east of it. The "switch track" runs east of the ore track, and joins with it. The widest point between the cars on these tracks is eight feet and nine inches. At the place of the accident, the cars would be six feet and four inches apart. Between the ore and switch tracks there is a well traveled road, as also between the main and ore tracks. Plank crossings were placed by the defendant near both ends of the switch track, where it joins the ore track, for the use of teamsters in crossing the track. A track called the "Winnamuck track" runs northeast from the switch track, built on a slight grade, and the "tramway track" lies further east, connecting with the Winnamuck track; and still further west there is a six foot ditch without bridges. Along these tracks were houses and trees, which partly obscured the locality where the tramway and Winnamuck tracks join from plaintiff's view as he drove over the crossing. Appellant's cars were placed on the ore track for the purpose of being loaded with ore by teamsters who came down the narrow canyon in the wagon road between the main and ore tracks. After unloading, these teamsters would usually cross the ore track at the northerly crossing, and drive back up the canyon between the

ore and switch tracks. This was the only way provided for going to and unloading ore into the cars.

On the day of the accident complained of, the ore track was filled with cars from crossing to crossing, and there was a long string of cars on the main track, extending northerly beyond the depot; so that, after unloading ore, the only available way to drive out of the yard was to cross the ore track at the northerly crossing, and pass back up the canyon in a southerly direction, between the ore and switch tracks. It was the custom of the defendant to push empty cars up the Winnamuck tracks, with an engine, past the house track, until it reached the junction with the tramway track, and then detach its engine from the cars, and run it along the tramway track, and allow its cars to pass down the Winnamuck track onto the switch track of their own gravity, and thus cross the ore and switch tracks. On the day of the accident complained of, plaintiff unloaded his ore into defendant's cars, standing on the ore track, and then drove across the northerly crossing of the ore track, and along the usually traveled road between the ore and the switch tracks up the canyon; and, after driving about 180 feet, five box and coal cars, which had been detached from the locomotive engine in the manner before described, were turned loose by the defendant's servants, and, by force of gravity, ran down the grade of the Winnamuck track, onto the switch track, striking the rear end of respondent's wagon, and crushing him and his horses and wagon between such cars and the cars standing on the ore track, $6\frac{1}{2}$ feet away, from which he suffered injuries, making it necessary to amputate his leg above the knee. It appears from the plaintiff's testimony that he looked and listened for cars before passing up the track, but saw none on the track; that there was no warning or signal of any kind given to warn him of the approaching cars, and no watchman was kept at the

place in question. The cars came down the grade at the
rate of 20 miles an hour. A brakeman standing on the
top of the front car testifies that he set the brakes before
reaching the wagon. Other testimony tends to show that
no attempt was made to set the brakes until the wagon
was reached. The plaintiff was a healthy man, of 28 years
of age, and was earning three dollars per day. It also
appears that the plaintiff had been engaged in hauling ore
at this point for 18 months, and was well acquainted with
the different tracks in the yard, and with the method·used
in switching cars. Plaintiff recovered a judgment in the
court below for $13,370. Defendant's motion for new
trial was overruled, on condition that $3,000 be remitted
from the judgment, which was done. Thereupon the
defendant appealed from the judgment, and from the order
denying defendant's motion for a new trial. The appellant
seeks a reversal of the judgment, assigning many errors
therefor. We shall only consider such assignments of error
as are discussed in appellant's brief.

Error is assigned upon the refusal of the trial court to
instruct the jury that it was the plaintiff's·duty, before
crossing defendant's line of railway, or before approaching
so closely thereto that he might be injured by passing
cars, to both look and listen for the cars; and if he failed
to do so, and if, by so doing, the collision could have
been averted, then the plaintiff was guilty of contributory
negligence, and could not recover. The court instructed
the jury upon this subject as follows: "The court further
charges you that, though the defendant may have been
guilty of negligence that contributed to the injury, yet, if
the plaintiff was also guilty of negligence that contributed
to the injury, he cannot recover; and, in determining
whether he acted with due care, you may take into con-
sideration the circumstances under which he was acting.
You have a right to take into consideration he was travel-

ing upon the traveled way usually traveled by persons hauling ore to this train. You have a right to take into consideration the observation that he made, so far as the evidence shows it; whether he looked out as he should have done for the danger of coming cars, or whether he listened. You should take into consideration all of the circumstances, all that he did, and all that he failed to do, in order to determine whether he acted with due care, or was guilty of negligence. (5) The court further charges you that if the plaintiff attempted to cross defendant's line of railway, or to approach so near it as that injury might have resulted to him, where he should, by the exercise of ordinary care, see that it was especially dangerous, it was plaintiff's duty to use an amount of care proportioned to the danger. Of course, when persons are acting under dangerous circumstances and conditions, it is their duty to act with respect to the danger that surrounds them, and to use a greater degree of care where there is much danger than where there is but little."

The testimony shows that the respondent did look and listen for cars as he drove around the cars on the ore track to the south, and that he neither saw nor heard any cars on the Winnamuck track. This testimony was not disputed. It will be seen that the court did charge the jury that, although the defendant may have been guilty of negligence that contributed to the injury, yet, if the plaintiff was also guilty of negligence that contributed to the injury, he could not recover, and that in determining whether plaintiff acted with due care, or negligently contributed to the injury, the jury should take into consideration the observation that he made, whether he looked out as he should have done for danger of coming cars, or whether he listened; that the jury should consider all he did, and all he failed to do, in order to determine whether he acted with due care, or was guilty of negligence. The

question of negligence on the part of the defendant, as well as the question of contributory negligence on the part of the plaintiff, which was the proximate cause of the injury, were proper questions of fact for the jury to determine, under all the circumstances of the case, and under proper instructions from the court. The question as to whether the plaintiff, at the time of the accident, was, under all the circumstances of the case, in the proper exercise of such due and reasonable care and diligence as would be expected of a reasonable, prudent, careful person similarly situated, was no more a question of law for the court than was the question of negligence on the part of the defendant.

It was held in *Railway Co.* v. *Ives,* 144 U. S. 417, 12 Sup. Ct. Rep. 679, that "each case must stand upon its own merits, and be decided upon its own facts and circumstances; and these are the features which make the question of negligence a primary one for the jury to determine, under proper instructions from the court." There is no fixed standard in the law by which a court is enabled to arbitrarily say in every case what conduct shall be considered reasonable and prudent, and what shall constitute ordinary care, under any and all circumstances. "It is the province of the jury to note the special circumstances and surroundings of each particular case, and then say whether the conduct of the parties in that case was such as would be expected of reasonable, prudent men, under a similar state of affairs. When a given state of facts is such that reasonable men may fairly differ upon the question as to whether there was negligence or not, the determination of the matter is for the jury. It is only where the facts are such that all reasonable men must draw the same conclusion from them, that the question of negligence is ever considered as one of law for the court." We think the question involved was fairly covered by the charge of the court, and thus properly left for the consid-

eration of the jury. *Quibell* v. *Railroad Co.,* 7 Utah, 122, 25 Pac. Rep. 734; *Olsen* v. *Railway .Co., ante,* 33 Pac. Rep. 623; *Wines* v. *Railway Co., ante,* 33 Pac. Rep. 1042; *Insurance Co.* v. *Unsell,* 144 U. S. 439, 12 Sup. Ct. Rep. 671.

Error is also assigned upon the refusal of the court to instruct the jury that, "if the defendant licensed the plaintiff to go with his team in that portion of its yard where plaintiff was injured, yet defendant would not be liable to plaintiff for any injury resulting to him from any conditions of the premises known to plaintiff, or from the ordinary nature of the business carried on by it there. This was refused, and the court charged the jury as follows: "The court further charges you that the defendant was not liable to the plaintiff under the proceedings of this action for any defect in the manner of the locating and construction of its tracks or switches. They have not alleged the location or construction of the switches as a cause of action, but it is your duty, in order to determine whether the plaintiff or the defendant acted negligently or with due care, to take into consideration the location of the tracks, and the whole situation, as shown by the evidence, in order to determine whether they did act prudently and with good care, or, on the contrary, whether they acted with negligence." We think this refusal contained no ground for reversal, for the reason that the court charged the jury that the defendant was not liable to the plaintiff under the pleading for any defect in the manner of the location or construction of the track or switches, etc. The charge contained all that was necessary to say upon that subject, and the defendant could not have been prejudiced by it. *Insurance Co.* v. *Unsell,* 144 U. S. 439, 12 Sup. Ct. Rep. 671.

Error is alleged upon the refusal of the court to charge the jury that if the plaintiff saw the cars coming, and

knew there was danger, or could, by the use of ordinary care, have seen the cars in time to escape by leaving his wagon, but, instead of doing so, remained for the purpose of saving his wagon and horses, in that case no damages should be' found for any injury to his person, etc. So far as this request involved the question of contributory negligence of the plaintiff, it was sufficiently covered by the general charge of the court. In the case of *Railway Co.* v. *Ives,* 144 U. S. 433, 12 Sup. Ct. Rep. 679, the court, in the discussion of a similar question, says: "The reason given by the court for refusing this request was that it is too much upon the weight of the evidence, and confines the jury to the particular circumstances narrated, without notice of others that they may think important. This reason is a sound one. In determining whether the deceased was guilty of contributory negligence, the jury was bound to consider all the facts and circumstances bearing upon that question, and not select one particular prominent fact or circumstance as controlling the case, to the exclusion of all others." On looking over the record, we find no testimony that the plaintiff had notice or knew that the cars were coming behind him until just before he was struck. Bippus testifies that he was about six feet away from the plaintiff when he saw the cars coming, and that he called to him while his wagon was in motion going south that the cars were coming; that plaintiff made no motion directly after he called, but after he had gone further, and after his second call, and just before he was struck, plaintiff seemed to urge his horses faster. Witness could not say whether plaintiff heard his warning or not. Plaintiff testifies that he did not hear the warning from Bippus; did not know the cars were coming; and that the cars came down upon him so quickly that he could not get out.

Error is assigned upon the ground that the court in-

structed the jury that, in case they found for the plaintiff, they could include damages to plaintiff's harness. The pleadings do not show that any claim was made for such damage. The record shows that plaintiff testified that his harness was damaged to the extent of $35, and thereupon, on motion of the defendant, said testimony was stricken out. It also appears that the plaintiff did not claim any such damage either by pleading or by evidence. Testimony was offered, and not contradicted, that the horse killed was worth $150, the wagon $115, and the expense of medical attendance $105, making $370. The verdict of the jury was for $13,370. There was no evidence in the case upon which to base the instruction. The use of the word "harness," in connection with damage to the horses, was doubtless a mere inadvertence on the part of the court, and, had the attention of the court been called to it at the time, it would have been corrected. It is not at all probable that the jury awarded any damage on account of this harness in making up their verdict, when there was no evidence upon which to support it. We are inclined to think the instruction was harmless. It was not applicable to the facts in the case, and the judgment should not be disturbed on that account. *People* v. *March*, 6 Cal. 544.

Error is also assigned upon the refusal of the court to instruct the jury to return a verdict for the defendant. This question involves the question as to the contributory negligence of the plaintiff, and has been fully discussed.

We have endeavored to consider and briefly discuss all the questions that have been presented in the briefs of counsel. We do not think it has been shown that any error was committed in the trial below which was prejudicial to the rights of the appellant. The judgment of the court below is affirmed, with costs.

BARTCH, J., and SMITH, J., concurred.