ELISHA PECK, JR., Respondent, v. OREGON SHORT LINE RAILROAD COMPANY, a Corporation, Appellant.

### No. 1363.    (69 Pac. 153.)

1. **Railroads: Accidents at Crossings: Instructions: "Stop, Look and Listen," Rule.**

When an injury is occasioned by a collision at a railroad crossing, the refusal of an instruction that the company can run its train over the track at regular periods or as special or extra trains, and the obligation to look and listen is one from which the traveler is at no time excused on preparing to cross a railroad at grade, is not error when the court not only gave the substance of such request, and charged that plaintiff was bound to use his sight and hearing and reasonable care, and give way to the train if in sight, but further instructed that, notwithstanding any

Peck v. Oregon Short Line R. R. Co.

omissions of the company, plaintiff could not recover if he could have discovered the approach of the train in time to avoid the accident.[1]

**2. Same.**
Where a track in the direction from which the train came which struck plaintiff on a crossing was obstructed by trees and a house, except that about twenty feet from the crossing an approaching train might have been seen at one place through the trees, and plaintiff slackened his speed to a slow walk, and looked and listened for trains, but did not stop, it was not error to refuse an instruction that if plaintiff could not see the train, and the noise of his wagon lessened his opportunity to determine the approach by his hearing, it was his duty, before going on the track, to stop and listen to ascertain whether or not a train was approaching.

**3. Same: Negligence: Question for Jury.**
The question whether plaintiff, under all the circumstances, was guilty of contributory negligence for failure to stop before crossing a car track, is a question for the jury.

(Decided June 18, 1902.)

Appeal from the Fourth District Court, Utah County.—*Hon. J. E. Booth,* Judge.

Action to recover damages for personal injuries alleged to have been received by the plaintiff through the negligence of the defendant company in the operation of its railroad. From a judgment in favor of the plaintiff, the defendant appealed.

AFFIRMED.

*P. L. Williams, Esq., Geo. H. Smith, Esq.,* and *J. W. N. Whitecotton, Esq.,* for appellant.

It is true only a few State courts have held that at ordinary crossings when there is an unobstructed view of the

---

[1] Leak v. Railway Co., 9 Utah 246; 33 Pac. 1045.

track, it is necessary for the traveler to stop, look, and listen, evidently for the sufficiently good reason, that he can see without stopping. But when he can not see on account of obstructions, we think the rule is well settled in all jurisdictions, that he must listen attentively, and if he is riding in a vehicle that makes a noise, he must stop the vehicle and the noise, so that his listening may be to some purpose. If that is the law (and that it is we have no doubt), then the court erred in refusing to instruct the jury as requested in defendant's first request, that it was the duty of the plaintiff to stop, and look, and listen, and erred in refusing to charge as requested in defendant's seventh request, to return a verdict for the defendant.

*Messrs. King, Burton & King,* for respondent.

Speaking of the rule announced in the words "stop, look and listen," Mr. Beach says: "But this rule has not met with general acceptance, though some courts apply it where there is an obstruction to the view." Beach on Contributory Negligence, pp. 268-9.

"The fundamental rule concerning the care to be exercised at a public railroad crossing by a traveler is that he must exercise that degree of caution usually exercised by prudent persons, conscious of the danger to which they are exposed at such crossings. If a crossing is peculiarly dangerous, a corresponding increase of caution is required. The general rule would, of course, demand that a vigilant use should be made of the eye in looking, and of the ear in hearing. The failure to exercise these faculties by one approaching a crossing would be such a departure from the observance of that degree of caution exercised by prudent persons at such crossings as to raise, under ordinary circumstances, an inference of negligence, about which reasonable men would not disagree. . . . The Pennsylvania rule, which seems to make it the duty to stop under all circumstances, regardless of obstruc-

tions to the view or obstacles to the hearing, has not met with general acceptance, and seems much calculated to condone carelessness and recklessness by railroad companies at public crossings, where the rights and duties of the public and of the company are reciprocal. Neither are we prepared to say that the duty of stopping is imperative in all cases where the track is obscured." Railroad v. Farra, 66 Fed. 496.

BARTCH, J.—This action was brought to recover damages for personal injuries alleged to have been received by the plaintiff through the negligence of the defendant in the operation of its railroad. It was alleged in the complaint, among other things, that the accident which resulted in this suit occurred in the city of Lehi, where the defendant's railroad track crosses one of the public streets; that there was an ordinance prohibiting the running of trains at a greater rate of speed than eight miles an hour within the inhabited portions of the city; that on the occasion of the accident the train was running at a rate of speed greater than that allowed by the ordinance, and was run carelessly in approaching the crossing; and that neither its whistle was sounded nor its bell rung. From the evidence it appears that the accident happened on the morning of December 4, 1899, in the inhabited portion of the city of Lehi, at a point where the defendant's railroad track crosses Peck street; that in approaching the crossing along Peck street the plaintiff's view of the railroad to the south—the direction from which the train in question came —was obstructed by a grove of trees, underbrush, and a small house, except that before reaching the house, which is about twenty-five feet from the railroad track, an approaching train might have been seen at one place by looking through the grove of trees; that on the morning of the accident the plaintiff was driving his team, consisting of two horses and a wagon, along Peck street toward the railroad on a trot, but before reaching the crossing he reduced the speed to a slow walk; that

in approaching the crossing he looked and listened for trains, but did not stop; that as he had passed the obstructions, which interfered with his view, and saw the train, his horses were stepping upon the track, and before he could back them off the engine struck them, and caused the injuries complained of; that it was a passenger train, running at the rate of at least fifteen—some witnesses say thirty-five to forty—miles an hour, the ordinance providing for a rate of speed at that place not to exceed eight miles an hour; and that this train was fifteen minutes late, and the plaintiff thought it had passed. As to whether the whistle was sounded either for the crossing or station, and as to whether the bell was rung, there is a conflict in the evidence, but the proof seems to preponderate against the defendant on these points. Upon the submission of the case to the jury a verdict in the sum of $4,650 was returned in favor of the plaintiff, and judgment was entered accordingly.

On this appeal various assignments of error are based upon the admission and rejection of evidence, but upon careful examination and consideration we are of the opinion that none of them are fatal to the judgment. It is, however, further contended that the court erred in refusing to submit to the jury appellant's request which reads as follows: "The duty of a traveler upon a highway at a railroad crossing to look and listen and to use care for the purpose of discovering the approach of the train before undertaking to pass over the railroad exists upon every occasion of his approaching such crossing. He is not relieved or excused from exercising the care required of him for the reason that he approaches such crossing shortly after a regular train is due, or supposed by him to have passed, or in fact has passed. The railroad track itself is an admonition of danger, and the railroad company has a right to run its train over the track at regular periods, or as special or extra trains, or in the event of their being behind time, the same as upon the regular

schedule; and the obligation to look and listen is one from which the traveler is at no time excused upon approaching and preparing to cross a railroad at grade." Instead of giving the above request verbatim, the court charged the jury in language following: "Negligence of the defendant in the omission to sound its whistle or ring its bell, or in running its locomotive and cars at an unusual or unlawful rate of speed, if you find such was the case, did not relieve the plaintiff from the exercise of care on his part to avoid the accident complained of. It was his duty, on approaching the railroad track, to use his senses of sight and hearing to ascertain whether or not a train was approaching upon the railroad track from either direction; and if there was a grove of trees or obstructions or other objects that intercepted his vision, and prevented him from seeing the approaching train, in the direction in which it came, then the law imposed upon him greater care to discover whether or not the train was approaching, by the exercise of the sense of hearing. Therefore, the court instructs you that if you find that the defendant was guilty of either or any of the negligent acts of commission or omission charged in the complaint, and you further find that the plaintiff, as he approached the track at the point where the accident occurred, could have discovered the approach of the train by looking and listening, but that he omitted to exercise such care, and was careless and negligent, and thereby, and as a consequence thereof, because of his negligence, omitted and failed to discover the approach of the train until it was too late to avoid the accident, then the injury of which he complains was the result not of the sole negligence of the defendant, but was a result of his own negligence co-operating with that of the defendant, if you find that the defendant was so negligent—then in that event the plaintiff would not be entitled to recover in this case." The court further charged that "the rights of a traveler on a highway at a point where it is crossed on a level by a railroad are so far subordinate to the railroad com-

pany as to require the traveler to give way to any train which is in sight or hearing and approaching said crossing, and so near said crossing as to make it doubtful whether he can cross in perfect safety." From a comparison of appellant's request with these instructions, it is obvious that the refusal to charge in the exact language requested was not error. In its instructions the court gave not only the substance of the request, and charged the jury that the plaintiff was bound to make use of his senses of sight and hearing, and to use reasonable care to discover the approach of the train, and that his rights at the crossing were so far subordinate to those of the railway company that he was required to give way to the train if in sight or hearing, but further instructed them, in effect, that, notwithstanding any negligent acts of commission or omission charged in the complaint, still, if the plaintiff "could have discovered the approach of the train" in time to avoid the accident, by the use of his sense of sight or hearing, he could not recover. This was stronger and more favorable to the appellant than it had a right to request, for we apprehend the question was not whether the plaintiff could, by any possibility, as the instruction would seem to imply, have discovered the train, but whether, by the exercise of reasonable care—such care as a reasonably prudent man, under all the circumstances, would have exercised—the plaintiff could have discovered the approaching train, and avoided the accident, notwithstanding the negligence of the defendant. If, therefore, the court committed error in its action on this point, the error was in favor of the railway company, and hence it has no cause to complain because thereof. All material propositions contained in the defendant's request were embraced in the charge of the court, and therefore it was not necessary to repeat them in a special request. Leak v. Railway Co., 9 Utah 246, 33 Pac. 1045; Railway Co. v. Leak, 163 U. S. 280, 16 Sup. Ct. 1020, 41 L. Ed. 160; Railroad Co. v. Ives, 144 U. S. 408, 12 Sup. Ct. 679, 36 L. Ed. 485.

It is next assigned for error that the court refused to charge the jury, as requested by the defendant, that if the plaintiff "could not see the train approach, and his wagon and team caused any noise that would interfere with or lessen his opportunity to determine the approach of the train by the exercise of his sense of hearing then it was his duty, before going upon the track, to stop and listen to ascertain whether or not a train might be approaching." It must be conceded that this request was in harmony with the rule adopted in a few of the American states, notably in Pennsylvania, where the rule of "stop, look, and listen," before attempting to cross a steam railway track is so inflexible that a non-observance of it under any circumstances, it seems, is held to be negligence per se. If, therefore, in that jurisdiction, a person attempts to drive across a steam railroad track, without first stopping to look and listen, and is struck and injured by a train, he is deemed, as a matter of law, guilty of such negligence that he can not recover, regardless of whether or not the railway company was also negligent. In Railroad Co. v. Beale, 73 Pa. 504, 13 Am. Rep. 753, it was said: "There never was a more important principle settled than that the fact of the failure to stop immediately before crossing a railroad track is not merely evidence of negligence for the jury, but negligence per se, and a question for the court." Omslaer v. Traction Co., 168 Pa. 519, 32 Atl. 50, 47 Am. St. Rep. 901. This rule has been applied in some other jurisdictions to cases where, in the vicinity of the crossings, the traveler's view of the railway track was obstructed. Thus the Supreme Court of Oregon, in Blackburn v. Southern Pac. Co., 55 Pac. 225, where, from a city street the view of the traveler in the vicinity of the crossing was obstructed, and he, without stopping his vehicle to listen for approaching trains, attempted to drive across the railroad track, and was struck by a train and killed, held that the failure to stop and listen before making the attempt to cross was negligence per se, and

the plaintiff was not permitted to recover, although the train was running at an unlawful rate of speed when the accident occurred.    Among this class of cases are Smith v. Railroad Co., 87 Me. 339, 32 Atl. 967; Railroad Co. v. Hogeland, 66 Md. 149, 7 Atl. 105, 59 Am. Rep. 159; Railroad Co. v. Smalley. (N. J. Err. & App.), 39 Atl. 695; Houghton v. Railway Co., 99 Mich. 308, 58 N. W. 314; and Henze v. Railway Co., 71 Mo. 636.    The doctrine of the above cases, however, has never been adopted in this jurisdiction.    Nor has the rule to "stop, look, and listen," been accepted or adopted by a majority of the courts of the Union, or by the Supreme Court of the United States.    The objection to its general acceptance appears to be that it singles out and places too much stress upon a single fact in evidence, whereas such fact, with all other material facts in the case, should be considered together in determining the question whether or not the traveler was exercising that degree of care which an ordinarily prudent man would, under similar circumstances, have exercised. Under the strict application of the Pennsylvania rule, the question of the contributory negligence of the injured is conclusively determined if it appears in evidence that he did not stop to look and listen before attempting to cross, and yet there are doubtless many cases where the facts and circumstances which surrounded the injured at the time of the occurrence, including the fact of the failure to stop before attempting to cross the track, are of such character that all reasonable men could not draw the same conclusion from them—the test for withdrawing such a case from the jury.    The enforcement, therefore, of such a rule, regardless of all the other facts in a case, would seem to be an invasion of the province of the jury. No doubt there are cases where the fact of a failure to stop should receive great weight in determining the right of recovery, but still it is within the province of the jury to pass upon that fact, and, looking at and weighing all the other facts and circumstances connected with the accident, to say whether

the failure to stop was an omission of that care and prudence which an ordinarily careful and prudent person should have exercised under such circumstances. The fundamental rule as to the care to be exercised at a railroad crossing is that both the traveler and those operating a railway train must exercise such caution as a man of ordinary care and prudence would exercise under like circumstances and surroundings. If the crossing is particularly dangerous, a degree of care commensurate with the danger is required of both parties. They have the mutual duty of keeping a sharp lookout for danger. The railroad company violates such duty by running its train at an unlawful rate of speed, or by failing to give proper warning of the approach of the train at the crossing; and the traveler violates it by failing to look and listen before attempting to cross; but his failure to stop before attempting to cross is not negligence per se within this jurisdiction, nor, it seems clear, within the majority of the jurisdictions of this country. In Olsen v. Railway Co., 9 Utah 129, 33 Pac. 623, where the material facts were quite similar to those in this case, counsel for the defendant requested, same as in this case, the court to charge the jury that it was the plaintiff's duty "to stop his team, and listen for approaching trains." This the court refused to do, but instructed the jury that in determining the question whether either party was negligent they "should take into consideration the circumstances and conditions with which they were surrounded" at the time of the accident, and that they had a right to take into consideration the fact, if they believed it from the evidence, "that there were obstructions to the view of the track or train from the road on which the plaintiff was traveling, and whether the train was a special one, and not a regular train, and whether there was a high wind or otherwise." The court further charged that, if there were obstructions to the view, "then it was the plaintiff's duty to use greater efforts to see and hear any train that might be approaching." The Supreme Court, passing upon the in-

structions and action of the court, held that the law of the case was fairly submitted to the jury, and in the course of its opinion said: "It was for the jury to pass upon the weight of the testimony, and as to whether or not the respondent was guilty of contributory negligence, under the circumstances in proof. . . . The plaintiff may have expected that, if any train was passing, it would blow its whistle or ring its bell, as provided by statute; . . . and that it would not be run at an unusual rate of speed, and without reasonable and timely warning of its approach; and, while expecting this, yet it was his duty, under the facts shown, to make careful and vigilant use of his eyes and ears, to look and listen for trains before crossing, and use greater efforts to see and hear any train that might be approaching than he would be expected to do were it not for the obstructions that prevented his view. We think these questions were fairly covered by the charge of the court, and thus properly left for the consideration of the jury." See, also, Leak v. Railway Co., 9 Utah 246, 33 Pac. 1045; Smith v. Railway Co., 9 Utah 141, 33 Pac. 626; and Olsen v. Railroad Co., 24 Utah 460, 68 Pac. 148. In Beach, Contrib. Neg., sec. 182, the author, speaking of the rule of "stop, look, and listen," says: "But this rule has not met with general acceptance, though some courts apply it where there is an obstruction to the view." So, in 7 Am. and Eng. Enc. Law (2 Ed.), 430, after referring to the Pennsylvania rule, it was said: "But in other jurisdictions such a precaution is not necessary to constitute 'ordinary care,' and the general rule is that a person about to cross a track must bear in mind the dangers attendant upon crossing, and vigilantly use his senses of sight and hearing in the endeavor to avoid injury. And if the traveler looked and listened, or did all that a prudent man would have done under the circumstances, it will not be said, as matter of law, that he should have stopped; nor will a failure to stop, look, and listen be held negligent when the circumstances were such that an ob-

servance of these precautions would have been unavailing as a guard against injury. Hence a failure to stop, look, and listen is not contributory negligence per se." In Patt. Ry. Acc. Law, sec. 175, the author says: "There does not however, seem to be any sound reason why any different rule should be enforced by the courts in cases of crossing accidents from that which prevails in all other actions grounded upon negligence and in which contributory negligence is available as a defense. There is, in every case, a preliminary question for the judge to determine, and that is whether, assuming the truth of the testimony and all the inferences that legitimately can be drawn from it, the jury would, as reasonable men, be justified in finding a verdict in favor of the party on whom the burden of proof rests. The application of that rule of procedure would leave to the jury the question of the effect of the failure of the injured person to look and listen, except in those cases where that failure, being proven or conceded as a fact by the plaintiff's case, was so obviously a contributory cause of the plaintiff's injury, and so incontrovertibly negligent, that a jury of reasonable men would not be justified in finding a verdict for the plaintiff. The hard-and-fast rule, first enunciated in the Pennsylvania cases, that under all circumstances the person injured must 'stop, look, and listen' before crossing a railway line, has no statutory basis, and is really a judicial usurpation of the functions of the jury; for there are conceivable cases in which the person injured might justifiably go upon the railway's line without pausing to 'stop, look, and listen'—as, for instance, when a flagman invites him to cross, or when a gate protecting the crossing stands open, or when the view of the line is so obstructed that nothing can be seen, and a storm of such severity is raging that no sounds incident to the movements of trains could possibly be heard. The Pennsylvania rule also goes further than that in most other jurisdictions in that it requires the person injured not only to 'look and listen,' but

also to 'stop'; yet, in most cases one who approaches the crossing of a railway line can effectually care for his safety by looking and listening, without stopping." The Supreme Court of New York, in Kellogg v. Railroad Co., 79 N. Y. 72, where the same question was raised, speaking through Mr. Justice EARL, said: "We can not say that at that particular time he should have looked toward the south. Under all the circumstances surrounding the accident, we think it was for the jury to determine whether he exercised that care which the law required of him. He could probably have avoided the accident by stopping before he passed upon the track. But that is a degree of care not usual even with very prudent persons. It has not been decided by the courts of this State that a person approaching a railroad is bound as matter of law to stop, to avoid the imputation of negligence. There may be cases in which a traveler ought to do so, and if he omits to do so it would be one of the facts, with all others, to be submitted to the jury." In Strong v. Railroad Co., 61 Cal. 326, where many of the material facts were similar to those herein, it was said: "Plaintiff was authorized to assume that all other persons using the street would do so with due care. It can not be imputed as negligence that he did not anticipate culpable negligence on the part of the employees of defendant. He had a right to assume, until he reached a point where he could look up and down the track, that no train was approaching the crossing, because there was no sound of an engine bell. He would have had no right to close his eyes had he been in a position to see the track, but, as already stated, the evidence shows that he could not look up and down the track, because of the intervening buildings and lumber, until he reached a point very near it. . . . We can not say that it was his duty to stop, fasten his team at some point considerably distant from the track, and from thence make a reconnoissance of the situation afoot. Whether plaintiff was properly cautious after he reached a place from which he could see the track was a

25 Utah—3

question of fact as to which we can not say the jury found wrongly." The same question here under consideration was before the Supreme Court of the United States in Railroad Co. v. Ives, 144 U. S. 408, 12 Sup. Ct. 679, 36 L. Ed. 485. There, as here, the accident which resulted in the suit occurred at a public street crossing. The view of the railroad from the street was obstructed by buildings, an orchard, and small bushes for several hundred feet, and not until the traveler was within fifteen or twenty feet of the track could he get a view of it. At the time of the accident the intestate and his wife attempted to drive across the track, and were struck by a train and killed. The train, it appears there, as in this case, was running at an unlawful rate of speed, and there, as here, the plaintiff's testimony showed that the whistle was not blown for the crossing, and that the bell was not rung. There, as here, counsel for the railroad company insisted that it was the traveler's duty to stop where he could get a clear view of the track, for the purpose of looking and listening, before attempting to cross, and that, as the intestate failed to do so, he was guilty of contributory negligence, which entitled the defendant to a verdict, and requested the court to so charge the jury. The court refused the request, saying: "It is too much upon the weight of the evidence, and confines the jury to the particular circumstance narrated without notice of others that they may think important." The Supreme Court said: "This reason is a sound one. In determining whether the deceased was guilty of contributory negligence, the jury were bound to consider all the facts and circumstances bearing upon the question, and not select one particular prominent fact or circumstance as controlling the case to the exclusion of all the others." Speaking with reference to contributory negligence on the part of the deceased, the Supreme Court also said: "It is earnestly insisted that although the defendant may have been guilty of negligence in the management of its train which caused the accident, yet the evidence in the case given by the

plaintiff's own witnesses shows that the deceased himself was so negligent in the premises that, but for such contributory negligence on his part, the accident would not have happened; and it is therefore contended that the court below should, as matter of law, have so determined, and, it not having done so, this court should so declare, and reverse its judgment. To this argument several answers might be given, but the main reason why it is unsound is this: As the question of negligence on the part of the defendant was one of fact for the jury to determine under all the circumstances of the case, and under proper instructions from the court, so also the question of whether there was negligence in the deceased which was the proximate cause of the injury was likewise a question of fact for the jury to determine under like rules. The determination of what was such contributory negligence on the part of the deceased as would defeat this action, or, perhaps, more accurately speaking the question of whether the deceased, at the time of the fatal accident, was, under all the circumstances of the case, in the exercise of such due care and diligence as would be expected of a reasonably prudent and careful person under similar circumstances, was no more a question of law for the court than was the question of negligence on the part of the defendant. There is no more of an absolute standard of ordinary care and diligence in the one instance than in the other." In Railroad Co. v. Farra, 13 C. C. A. 602, 66 Fed. 496, referring to the rule "to stop, look, and listen," it was said that this rule "seems much calculated to condone carelessness and recklessness by railroad companies at public crossings, where the rights and duties of the public and of the company are reciprocal. Nor are we prepared to say that the duty of stopping is imperative in all cases where the track is obscured. There may be circumstances, as in the case at bar, where the duty is debatable, and proper for the consideration of the jury." 1 Shear. & R. Neg., sec. 92; 7 Am. and Eng. Ency. Law (2 Ed.), 430, 433, 436; Beach, Contrib. Neg., secs.

181, 183; Railroad Co. v. Mizell, 100 Ky. 235, 38 S. W. 5; Railroad Co. v. Rice, 10 Kan. 426; Greany v. Railroad Co., 101 N. Y. 419, 5 N. E. 425; Railroad Co. v. Morgan, 43 Kan. 1, 22 Pac. 995; Wright v. Railroad Co., 94 Ky. 114, 21 S. W. 581; Hughes v. Railway Co., 88 Iowa 404, 55 N. W. 470; Reed v. Railway Co., 74 Iowa 188, 37 N. W. 149; Salter v. Railroad Co., 88 N. Y. 42; Davis v. Railroad Co., 47 N. Y. 400; Russell v. Railroad Co., 118 N. C. 1098, 24 S. E. 512; Neudoerffer v. Railroad Co., 9 App. Div. 66, 41 N. Y. Supp. 50; Hall v. Railway Co., 13 Utah 243, 44 Pac. 1046, 57 Am. St. Rep. 726; Dederichs v. Railroad Co., 13 Utah 34, 44 Pac. 649; Schneider v. Railway Co., 134 Cal. 482, 66 Pac. 734; Tyler v. Railroad Co., 137 Mass. 238; Clark v. Railroad Co., 164 Mass. 434, 41 N. E. 666; Railroad Co. v. Crawford, 24 Ohio St. 631, 15 Am. Rep. 633; Donohue v. Railway Co., 91 Mo. 357, 2 S. W. 424, 3 S. W. 848; Eilert v. Railroad Co., 48 Wis. 606, 4 N. W. 769; Improvement Co. v. Stead, 95 U. S. 161, 24 L. Ed. 403.

Upon a careful consideration of this case, we are of the opinion that the court sufficiently charged the jury as to the care which the law required travelers and railway companies to exercise at public railway crossings to prevent accidents. On that question the charge given is as strong as the defendant had a right to request, and, under the circumstances disclosed in the evidence, the court did not err in refusing to further charge that it was the duty of the plaintiff to stop for the purpose of looking and listening before attempting to cross the track. The failure to stop was properly left to the jury to be considered by them, with all other circumstances in evidence, in determining the question of contributory negligence.

The question whether the plaintiff, under all the circumstances, and in view of the existing conditions and surroundings, exercised due care was for the jury. The facts and circumstances disclosed by the proof were not such that the court could say, as matter of law, that ordinary care

required plaintiff to stop his team before crossing the track. We find no reversible error in the record.

The judgment is affirmed, with costs.

MINER, C. J., and BASKIN, J., concur.