## STEED v. RIO GRANDE WESTERN RY. CO.

No. 1608 (82 Pac. 476).

Railroads—Accident at Crossing—Contributory Negligence.—In an action against a railroad company for injuries sustained at a crossing, evidence considered, and *held*, that the question of contributory negligence was properly submitted to the jury.

(Decided September 2, 1905.)

Appeal from District Court, Davis County; Charles H. Hart, Judge.

Action by Thomas Steed against the Rio Grande Western Railway Company. From a judgment in favor of plaintiff, defendant appeals.

Affirmed.

*Sutherland, Van Cott & Allison* for appellant.

*Evans & Evans* and *David Evans* for respondent.

### APPELLANT'S POINTS.

The undisputed testimony in the case shows that the plaintiff was guilty of contributory negligence in failing to see or hear the approaching train. The rule is settled beyond dispute that it is the duty of a traveler upon a public highway when approaching a railroad crossing to look and listen in both directions for an approaching train, and if he fail to discharge this duty, he is conclusively presumed to be guilty of contributory negligence. In the case at bar, it is entirely clear that the plaintiff neglected to perform this duty, and the court should therefor have given the peremptory instruction requested by the defendant. (*Vreeland v. Cincinnati S. & M. R. Co.* [Mich.], 67 N. W. 905; *Cantrell v. Erie R. Co.* [N. J.], 43 Atl. 881; *Bomboy v. Railroad Co.*, 47 Hun

425; *Stopp v. Fitchburn R. Co.*, 29 N. Y. Supp. 1008; *Hart-man v. Harris et al.* [Pa.], 37 Atl. 942; *Railroad Company v. Kistler* [Ohio], 64 N. E. 130, 133; *Hook v. Missouri Pac. Ry. Co.* [Mo.], 63 S. W. 360, 21 E. & A. R. Cas. 787; *Tuck-er v. N. Y. C. & H. R. R. R. Co.*, 124 N. Y. 308; *Houghton v. Chicago & G. T. Ry. Co.* [Mich.], 58 N. W. 314; *Nor-thern Pac. R. R. Company v. Freeman*, 174 U. S. 379; *Rail-road Company v. Beale*, 73 Pa. St. 504; *Winter v. N. Y. & L. B. R. Co.*, 50 Atl. 339; *Beyel v. Newport News & Mis-sissippi Valley R. Co.* [W. Va.], 45 A. & E. R. Cases 188; *Aurelius v. Lake Erie & W. R. Co.* [Ind.], 49 N. E. 857.)

RESPONDENT'S POINTS.

The point presented in this case is so elementary that it would seem presumptuous to burden the court with quotations from the books. This court has refused to adopt the rule that travelers must "stop" as well as to "look and listen" before entering upon a railroad track. There can be no dispute as to the principles of law involved. The record shows that respondent did look and listen and adopted every reasonable precaution to secure his own personal safety; that appellant was reckless and wholly disregarded the safety of the traveling public. As to whether respondent was chargeable with contributory negligence is purely one of fact and clearly within the province of the jury to determine. These questions have been repeatedly decided by this court. (*Bitner v. Railway*, 4 Utah 502; *Olsen v. Railway*, 9 Utah 129; *Smith v. Railway*, 9 Utah 141; *Leak v. Railway*, 9 Utah 246; *Deidrichs v. Railway*, 13 Utah 34; *Peck v. Railway*, 25 Utah 21; *Ives v. Railway*, 144 U. S. 408.)

"The determination of what was contributory negligence on the part of respondent, as would defeat this action, or per-haps more accurately speaking, the question of whether respondent at the time of the final accident was, under all the circumstances of the case, in the exercise of such due care and diligence as would be expected of a reasonably prudent

29 Utah—29

and careful person under similar circumstances, was no more a question of law for the court than was a question of negligence on the part of the defendant. There is no more of an absolute standard of ordinary care and diligence in the one instance than in the other." (*Ives v. Railway,* supra.)

While it may be unnecessary for the decision of this case, yet as a legal proposition under the circumstances shown, it does not necessarily follow that although respondent may have been negligent, he should be denied the right to recover. In *Railway v. Ives,* supra, that court used the following appropriate language: "In such case, if the approximate and immediate cause of the injury can be traced to the want of ordinary care and caution in the person injured, an action for the injury cannot be maintained, *unless it further appears that the defendant might by the exercise.of reasonable care and prudence, have avoided the consequences of the injured parties' negligence."* (The italics are ours.) Since that decision this court has many times followed the same rule.

STATEMENT OF FACTS.

This is an action for personal injuries alleged to have been sustained by plaintiff in a collision between his team and wagon and a train of cars owned and operated by defendant company. The facts as disclosed by the record are as follows: On the 27th day of June, 1903, the plaintiff, who was seventy-seven years of age, was driving a gentle team of horses attached to a common farm wagon in a westerly direction along a public highway, called "Glover's Lane," into what is known as "Farmington Bottoms," and, while in the act of crossing defendant's railroad track where it intersects said highway, a work train, which was going north at the rate of about twenty miles per hour, struck plaintiff's wagon. The wagon road runs east and west, and the railroad runs north and south, and crosses the wagon road at right angles. About 225 feet south of the crossing the railroad passes through a deep cut, which obscures from view trains running north until they emerge from the cut. From 100 to 150 feet east of the crossing there is an elevation from which a train can be

seen south of the cut. From this point west the wagon road descends through a depression which obscures from view trains south of the cut. About fifty feet east of the railway track the grade begins to rise to the west, and continues, until the intersection is reached, to an elevation of about six feet. Near by and on the south side of the wagon road a wire fence is constructed through the depression to within about twenty feet of the railway track, from which point the continuation of the fence consists of a closely constructed picket fence about six feet high, which joins the cattle guards, leaving room only for the passage of trains. There is also a line of poles along the east side of the railway track. Plaintiff is a farmer, and owns land lying some distance west of the railway. On the day of the accident he started for his farm, driving his team and sitting with his body stooped and head bowed in a spring seat attached to his wagon box. When he arrived at the elevation referred to, he stopped his team, looked to the south, as was his custom, and, observing no train, resumed his journey westward along the highway. Being late and in a hurry on the morning in question, he trotted his horses, and went down through the depression "pretty fast," looking and listening for the approach of a train, but seeing or hearing none. At the bottom of the depression he checked the speed of his team, and from that point to the intersection it walked slowly, hardly more than two miles an hour. As he approached the track he looked both ways, and listened for the approach of trains, but he neither saw nor heard any. As he was in the act of crossing the track his wagon was struck by a car which was attached to a work train of twenty-one flat cars being pushed ahead of an engine north through the cut referred to. The wagon was crushed and torn loose from the horses, the latter being left uninjured throwing and landing plaintiff on the opposite end of the car, causing the injuries complained of. There was no warning whatever given by persons in charge of the train, except that almost simultaneously with the collision a person on the car "yelled," which was unavailing on account of being too late. Two years prior to this accident plaintiff at the same place came

near being caught by a passenger train which he saw coming out of the cut at about the time his horses stepped on the track. This incident caused plaintiff to ever after keep, including the morning in question, a close watch for trains when he was approaching the railway track at that place. Plaintiff was rendered unconscious by the collision, his head was badly hurt, one of his legs partially disabled, and he was otherwise bruised and permanently injured, which injuries have nearly incapacitated him from performing manual labor. The issues were submitted to a jury, who found in favor of plaintiff, and assessed his damages at $1,000. Defendant appeals.

McCARTY, J., after stating the facts, delivered the opinion of the court.

Appellant requested the court to peremptorily instruct the jury to return a verdict in favor of defendant, which request was denied. The error predicated upon the refusal of the court to give this instruction is the only one assigned and relied upon by appellant for a reversal of the case. No testimony was offered by the railway company to rebut the evidence introduced by plaintiff showing negligence on the part of the company because of its failure to give the usual and customary warnings and signals as the train on the morning in question approached the crossing immediately preceding the collision which resulted in the injuries to plaintiff hereinbefore mentioned, but it relies solely upon the alleged contributory negligence of plaintiff to exonerate it from liability. Counsel for defendant in their brief say: "The rule is settled beyond dispute that it is the duty of the traveler upon a public highway, when approaching a railroad crossing, to look and listen in both directions for an approaching train, and if he fails to discharge this duty he is conclusively presumed to be guilty of contributory negligence." And they cite many cases in support of this doctrine. Conceding this to be the rule, can it be said, in face of the record in this case, that the plaintiff failed in any respect to strictly observe and follow this rule? Plaintiff testified that as he

approached the railway crossing he was on the alert, and both looked and listened for approaching trains and that just before going upon the track he "looked to the north, as well as to the south," along the railroad track, but neither saw nor heard the approaching train. Defendant insists, however, that, while there was no oral testimony which rebutted or tended to rebut plaintiff's evidence on this point, the physical conditions there, such as the location of the crossing with reference to that of the cut, the lay of the ground between those two points, and the contour of the land surrounding and in the immediate vicinity thereof, were of such a character that it not only rebuts plaintiff's testimony, but conclusively shows that, had he looked and listened for the train at a point from 100 to 150 feet east of the crossing, or immediately before he started to cross the track, two of the places where he testified he did look and listened, he would have seen the cars as they emerged from the cut in time to have avoided the collision, and that his failure to do so was negligence on his part, and the court should have directed a verdict for defendant as requested.

There is evidence in the record which, if true, shows that at the time plaintiff was crossing the track his horses had slackened their gait and "were almost to a standstill," and, in his anxiety "to get over," he diverted his attention from the railroad track to his team, and at this juncture the collision occurred. A witness who saw the collision testified on this point in part as follows: "I saw the plaintiff as he was crossing the track. . . . I saw his horses when they came upon the track. I was on a load of hay about one-fourth mile northeast of there. . . . I noticed him go upon the track about time the train came from the cut. I saw his horses just as they come up onto the track, and then I heard a yell and a crash." There is evidence in the record which shows that the picket fence mentioned in the foregoing statement of facts tended to obstruct plaintiff's view of the track to the south as he was nearing the crossing on the occasion referred to. Quoting, in part, his own testimony on this point, he says, referring to the fence: "Well, it is some obstruction to the

track; of course it is." Taking into consideration all of the foregoing facts and circumstances, as well as the advanced age of plaintiff, which to some extent must have dimmed his sight and impaired his hearing, his continuous lookout for the train, together with the further fact that it only took the train but a few seconds at most to traverse the distance from where it emerged from the cut to where the collision occurred, we are not warranted in holding that as a matter of law plaintiff failed to exercise the same degree of care and diligence as would be expected of a reasonably prudent man acting under the same or similar circumstances, conditions, or state of affairs, and was therefore guilty of contributory negligence.

> "When a given state of facts is such that reasonable men may fairly differ upon the question as to whether there was negligence or not, the determination of the matter is for the jury. It is only where the facts are such that reasonable men must draw the same conclusion from them that the question is ever considered as one of law for the court." (*Grand Trunk Ry. Co. v. Ives,* 144 U. S. 408, 12 Sup. Ct. 679, 36 L. Ed. 485; *Railroad Co. v. McDade,* 135 U. S. 554, 10 Sup. Ct. 1044, 34 L. Ed. 235; *Linden v. Mining Co.,* 20 Utah 134, 58 Pac. 355; *Holland v. Oregon Short Line R. R. Co.,* 26 Utah 209, 72 Pac. 940.)

We are of the opinion, and so hold, that the question of contributory negligence was properly submitted to the jury, and that the court did not err in refusing to give the peremptory instruction asked for by defendant. (*Bitner v. Utah Cen. Ry. Co.,* 4 Utah 502, 11 Pac. 620; *Olsen v. O. S. L. & U. N. Ry. Co.,* 9 Utah 129, 33 Pac. 623; *Smith v. Rio Grande Western Ry. Co.,* 9 Utah 141, 33 Pac. 626; *Leak v. Railway Co.,* 9 Utah 246, 33 Pac. 1045; *Dederichs v. S. L. C. Ry. Co.,* 13 Utah 34, 44 Pac. 649; *Peck v. Oregon Short Line Ry. Co.,* 25 Utah 21, 69 Pac. 153.)

The judgment is affirmed, with costs.

BARTCH, C. J., and STRAUP, J., concur.